**STATE OF ARIZONA ex rel. Edgar MERRILL, Sheriff of Apache County, Appellant,**

v.

**Wayne TURTLE, Appellee.**

**No. 22779.**

United States Court of Appeals
Ninth Circuit.

June 26, 1969.

Norval C. Jesperson (argued), Asst. Atty.Gen., Darrell F. Smith, Atty.Gen., Phoenix, Ariz., for appellant.

Vard R. Johnson (argued), Theodore R. Mitchell, Window Rock, Ariz., of Dinebeiina Nahiilna Be Agaditahe (DNA), for appellee.

Before MADDEN,* Judge of the United States Court of Claims, and MERRILL and BROWNING, Circuit Judges.

MADDEN, Judge:

Appellee, a Cheyenne Indian who resides with his Navajo Indian wife on the Navajo Reservation in Arizona, is sought by the State of Oklahoma for trial on a charge of second degree forgery. Oklahoma apparently first applied to the Navajo Tribal Council for appellee's extradition. Appellee was thereafter brought before the Navajo Tribal Court, but following a hearing, that court ordered him released, apparently on the ground that Navajo tribal law provided for extradition only to the

---

* Senior Judge, The United States Court of Claims, sitting by designation.

three neighboring states of Arizona, New Mexico and Utah.

After the Navajo Tribal Court declined to extradite appellee to Oklahoma, Oklahoma made demand upon the Governor of Arizona to secure appellee for extradition, and the Governor issued his warrant of extradition pursuant to Arizona law. The sheriff of Apache County, Arizona, thereupon executed the Arizona Governor's warrant by arresting appellee on the Navajo Reservation and confining him at the tribal jail facility to await removal to Oklahoma. Before Oklahoma authorities arrived to take custody of him, appellee sought a writ of habeas corpus from the United States District Court for the District of Arizona, on the ground that the State of Arizona had no authority to arrest him on the Navajo Reservation.

The District Court after hearing ordered issuance of the writ on the grounds that the Arizona authorities had exceeded their jurisdiction in arresting appellee on the Navajo Reservation. The District Court made no formal findings and wrote no opinion. The State of Arizona urges here, as it did in the District Court, that Article IV, Section 2 of the United States Constitution requires that the state retain extradition jurisdiction over Indian residents of the Navajo Reservation.[1] We affirm the decision of the District Court.

The relationship between the Navajo Tribe, the United States and the State of Arizona has previously been considered by the Supreme Court in Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L. Ed.2d 251 (1959) and by this court in Littell v. Nakai, 344 F.2d 486 (9th Cir. 1965). The history reviewed by the courts in these cases discloses that historically the Indian tribes were regarded as distinct political communities, protected by treaty from the laws of any state and subject only to the plenary power of Congress over Indian affairs. See Worcester v. Georgia, 31 U.S. 515, 6 Pet. 515, 8 L.Ed. 483 (1832); Ex parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883); United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L. Ed. 228 (1886). Over the years this original concept of tribal sovereignty has been modified to permit application of state law to reservation Indians in matters not considered essential to tribal self-government, but the basic principle that the Indian tribes retain exclusive jurisdiction over essential matters of reservation government, in the absence of specific Congressional limitation, has remained. "Essentially, absent governing Act of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, supra at 220 of 358 U.S., at 271 of 79 S.Ct.

In Williams v. Lee, the Supreme Court considered the question whether the Arizona state courts had authority to entertain civil suits against Indian residents of the Navajo Reservation arising out of commercial transactions on the Reservation. In holding that Arizona courts did not have such authority, the Supreme Court emphasized the broad independence retained by the Navajo Tribe since its formal recognition by the United States in the Treaty of 1868, 15 Stat. 667 (1868). In characterizing the nature of the tribal sovereignty recognized by this treaty, the court said at pp. 221–222, 79 S.Ct. at p. 271:

"Implicit in these treaty terms, as it was in the treaties with the Cherokees involved in Worcester v. State of Georgia, was the understanding that the internal affairs of the Indians remained exclusively within the jurisdiction of whatever tribal government existed."

The court went on to point out that Congress in the intervening years has

---

1. A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime.

not acted to limit the authority of the Navajo Tribe over governmental affairs within the Reservation. The court noted that, to the contrary, since the Treaty of 1868 "Congress and the Bureau of Indian Affairs have assisted in strengthening the Navajo tribal government and its courts. * * * The Tribe itself has in recent years greatly improved its legal system through increased expenditures and better-trained personnel."

In Littell v. Nakai, supra, this court, following the rationale of the *Williams* decision, held that a federal court sitting in a diversity case was likewise without jurisdiction over an action alleging tortious interference with contractual rights, *the situs of which interference* was the Navajo Reservation, brought by a non-Indian against an Indian resident of the Reservation. Noting that "a strong Congressional policy to vest the Navajo Tribal Government with responsibility for their own affairs emerges from the decision in Williams," this court concluded that exclusive jurisdiction over such a suit remained in the Navajo tribal courts. *Ibid* at p. 489 of 344 F.2d.

The initial question presented by this case, then, is whether Arizona's claim to extradition jurisdiction over Indian residents of the Navajo Reservation is subject to the tests of non-interference with the right of tribal self-government laid down in *Williams,* or is free from those limitations by reason of Article IV, Section 2 of the Constitution.

■ Article IV, Section 2, read literally, purports to impose upon the governor of each State a duty to deliver up fugitives charged with a crime in a sister state. The constitutional mandate requires exercise of the state's lawful jurisdiction in responding to the extradition demands of sister states, but it does not itself attempt to define the reach of that jurisdiction. We have found no authority bearing directly upon the relationship between Article IV, Section 2, and treaty-protected Indian lands and conclude that with regard to the exercise of extradition jurisdiction over Indian residents of the Navajo Reservation, the constitutional mandate must be interpreted in light of the Treaty of 1868 and the long history of the principle of retained tribal sovereignty.

■ As indicated above, the historical development of this principle down to its contemporary formulation in *Williams* prohibits the State of Arizona, in the absence of specific Congressional authorization, from extending its laws or process to the Navajo Reservation if to do so would interfere with tribal self-government or impair a right granted by federal law. We have been referred to no specific Congressional action limiting the power of the Navajo tribal government to deal with the extradition of Indians resident within the Reservation or granting to the State of Arizona the authority to exercise extradition jurisdiction over such residents.[2] In these circumstances, Arizona's right to exercise the jurisdiction claimed must be determined in light of whether such exercise would "infring[e] on the right of reservation Indians to make their own laws and be ruled by them," (Williams v. Lee, supra at p. 220 of 358 U.S., at p. 271 of 79 S.Ct.) or, as the Williams' test was characterized by the court in Kake, Organized Village of v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1961), "whether the application of that law would interfere with reservation self-government." *Id.* at p. 67, 82 S.Ct., at p. 567.

■ Applying these considerations, we conclude that Arizona's exercise of the claimed jurisdiction would clearly interfere with rights essential to the Navajo's self-government. The essential and intimate relationship of control of the

2. Title 18 U.S.C. § 3182 implements the provisions of Article IV, Section 2, which are not self-executing, by providing a uniform procedure for effectuating intrastate extradition. The statute, as with the constitutional provisions it implements, directs the exercise of the full extent of the state's authority, but does not attempt to define how far that authority extends.

extradition process to the right of self-government was recognized long ago in Kentucky v. Dennison, 24 How. 66, 16 L.Ed. 717 (1861), holding that there is no power, state or federal, to compel a state to perform its constitutional duty of extradition.

Furthermore, the right of the Navajo Tribe to exercise power over Indian residents of its reservation appears to have been recognized by the federal government from the outset by the terms of the Treaty of 1868. Article I of the Treaty provides in relevant part:

> If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States and at peace therewith, the Navajo Tribe agree that they will, on proof made to their agent, and on notice by him, deliver up the wrongdoer to the United States, to be tried and punished according to its laws; and in case they wilfully refuse so to do, the person injured shall be reimbursed for his loss from the annuities or other moneys due or to become due to them under this treaty, or any others that may be made with the United States * * *

These provisions recognized a jurisdiction in the Navajo Tribe over inter-sovereign rendition, at the time the relationship between the United States and the Tribe was originally defined. This jurisdiction was apparently intended to be exclusive, for only a damage remedy was provided for the wrongful refusal to extradite.

In 1956 the Navajo Tribal Council, the tribal legislative body, adopted a Resolution providing procedures for Indian extradition. While this tribal extradition law by its terms specifically provides for extradition only to the states of Arizona, Utah, and New Mexico, it has been ap-proved by the Commissioner for Indian Affairs as provided for by federal law and is now part of the Navajo Tribal Code. 17 N.T.C., Sections 1841–42. The Tribe has thus codified and does now exercise its extradition power. This power cannot now be assumed by or shared with the State of Arizona without "infring[ing] on the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, supra at p. 220 of 358 U.S., at p. 271 of 79 S.Ct.

 This conclusion does not frustrate the State of Arizona in carrying out the constitutional mandate of Article IV, Section 2. It simply recognizes that Arizona has no authority, and hence no duty, to exercise extradition jurisdiction over Indian residents of the Navajo Reservation.[3]

Affirmed.

3. Appellant suggests that the result we have reached here will leave a hiatus in the application of extradition law within the Navajo Reservation, in that the applicable Navajo law appears to provide for extradition only to the states of Arizona, Utah and New Mexico. To the extent that such a hiatus does exist, it is for the Navajo Tribe, or Congress, not the State of Arizona, to fill it.