No. 13332

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

STATE OF MONTANA ex rel
SHARON OLD ELK, JR.,

Relator,

-vs-

THE DISTRICT COURT OF THE STATE OF
MONTANA, in and for the County of Big
Horn, and the HONORABLE CHARLES LUEDKE,
Presiding Judge,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

Moses, Kampfe, Tolliver and Wright, Billings,
Montana
Frank Kampfe argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
John F. North, Assistant Attorney General, appeared,
Helena, Montana
James Seykora, County Attorney, argued, Hardin,
Montana

---

Submitted: April 8, 1976

Decided: JUL - 8 1976

Filed: JUL - 8 1976

THOMAS J. KEARNEY

---

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is a challenge to the jurisdiction of the district court, presented to this Court on a petition for a writ of supervisory control or other appropriate writ. Relator is the defendant in a criminal action in the district court, Big Horn County. Relator is an enrolled member of the Crow Tribe of Indians and resides within the exterior boundaries of the Crow Indian Reservation. The Crow Tribe of Indians appeared and argued as Amicus Curiae.

On November 27, 1975, at the Hilltop Tavern located approximately one mile west of Hardin, Montana, outside the exterior boundary of the Crow Indian Reservation, a shooting occurred in which one John Matt Bell was killed by a high powered rifle.

The Big Horn County sheriff's department, pursuant to an investigation, had reason to believe that Sharon Old Elk, Jr. was involved in the commission of the crime and that his vehicle, a green 1971 Plymouth Duster bearing Big Horn County, Montana, license plates 22-4259, was also involved and at the time of the homicide the car of Sharon Old Elk, Jr. was extensively damaged on the left front door.

Pursuant to investigation, a complaint was prepared for deliberate homicide, charging Sharon Old Elk, Jr. with the crime and was brought before the Honorable Kenneth Snively, Justice of the Peace at Hardin, Montana. An arrest warrant was issued for one Sharon Old Elk, Jr. The warrant was delivered together with a copy of the complaint to Sheriff Robert L. Brown.

The vehicle believed to be used during the homicide was spotted within the exterior boundaries of the Crow Indian Reservation on trust property owned by George Old Elk II.

The sheriff of Big Horn County proceeded onto the Crow Indian Reservation armed with a state arrest warrant, and in the presence of a Bureau of Indian Affairs Special Officer proceeded to the Crow Indian Tribal Judge, Fredrick Knows His Gun.

As a matter of formality and courtesy and knowing there was no formal extradition proceedings within the Crow Tribe and knowing the Crow Tribe had no extradition power or statute, the sheriff of Big Horn County requested the Tribal Judge to issue a tribal court order or similar warrant for the arrest and apprehension of Sharon Old Elk, Jr. Judge Knows His Gun did not issue such a warrant and in fact refused to do so.

Sheriff Robert L. Brown together with other deputies and Bureau of Indian Affairs Special Officer William Snell, proceeded to the George Old Elk II residence located approximately three miles south of Crow Agency, Montana, which is located on trust property.

Sheriff Brown placed relator, Sharon Old Elk, Jr., under arrest, pursuant to the state arrest warrant, and advised him of his constitutional rights, served a copy of the warrant and the complaint upon relator and transported him back to Big Horn County Courthouse at Hardin, Montana, where the relator was arraigned before Judge Kenneth Snively, Justice of the Peace.

There is no federal, state or Crow Indian statute, ordinance or regulation authorizing the procedure of extradition to and from an Indian reservation within the exterior boundaries of the state of Montana.

- 3 -

All the facts necessary to review the issue presented to this Court by relator have been stipulated and admitted as evidence by the parties.

Relator contends the facts surrounding his arrest clearly show the arrest was illegal since it was made pursuant to a state arrest warrant, executed by a state officer, on an Indian person within the boundaries of an Indian reservation. The arrest and subsequent transportation of relator from the reservation by the sheriff of Big Horn County, establish a de facto extradition procedure which relator believes is invalid, illegal and in violation of his constitutional rights.

Relator has cited all of the recognized cases which establish the unique status of the American Indian as a citizen and the relationship between the Indian and jurisdictional powers of the tribal government, federal government and the state government. Very simply most matters within the exterior boundaries of an Indian reservation are within the exclusive jurisdiction of the tribal courts or federal courts unless falling specifically within the state's jurisdiction as directed or allowed by an act of Congress. There is no disagreement as a general proposition with this argument of relator. Relator relies on McClanahan v. State Tax Commission of Arizona, 411 U.S. 164, 93 S.Ct. 1257, 36 L.ed 2d 129, 135, for the proposition that:

> "'* * * Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them.'"

Relator then cites as his principal authority in relation to service of process, arrest or extradition jurisdiction by state authorities over Indian residents of a reservation the case of State of Arizona ex rel. Merrill v. Turtle, 413 F.2d 683,686 (9th Cir. 1969).

- 4 -

In Turtle, a Cheyenne Indian, who resided on the Navajo Indian Reservation in Arizona, was sought by the State of Oklahoma for trial on a charge of second degree forgery. Oklahoma first applied to the Navajo Tribal Council for extradition of defendant. The Navajo Tribal Court refused to extradite the defendant. As a result of a request from Oklahoma officials, the Governor of Arizona ordered the extradition of the defendant, pursuant to Arizona law. The sheriff of Apache County, Arizona, executed the Arizona Governor's warrant by arresting the defendant on the reservation and confining him in the tribal jail. The Ninth Circuit Court held that Arizona's exercise of claimed jurisdiction would clearly interfere with the rights essential to the Indian's self-government.

The Ninth Circuit Court reached its decision by considering the criteria of whether the claimed right by Arizona to exercise jurisdiction by means of extradition would infringe on the right of reservation Indians to make their own laws and to be ruled by them or whether the application of state authority to extradite would interfere with reservation self-government.

Relator concludes his argument with the request that this Court regard an Indian reservation, within the state of Montana, as a co-equal sovereign, such as our 49 sister states. This simplifies the remedy here by application of the Uniform Criminal Extradition Act, sections 95-3101 through 95-3136, R.C.M. 1947.

This proposal may have an appealing ring the first time around, however, it would take a great deal more from our Indian citizens than it would bestow, if in fact we had the power to do so, which in fact we do not.

We agree with the proposition that in the absence of governing acts of Congress, the question has always been whether state action

infringed on the right of reservation Indians to make their own laws and to be ruled by them.

We disagree with relator's application of the Turtle case to the instant facts to demonstrate an interference in the right of the Indians to make their own laws and be governed by them. In Turtle the situation is analogous to the question before us however, the one important exception is that the Navajo Tribe of Indians had adopted a resolution in regard to an extradition proceeding. The Court stated:

> "In 1956 the Navajo Tribal Council, the tribal legislative body, adopted a Resolution providing procedures for Indian extradition. While this tribal extradition law by its terms specifically provides for extradition only to the states of Arizona, Utah, and New Mexico, it has been approved by the Commissioner for Indian Affairs as provided for by federal law and is now part of the Navajo Tribal Code. 17 N.T.C., Sections 1841-42. The Tribe has thus codified and does now exercise its extradition power. This power cannot now be assumed by or shared with the State of Arizona without 'infring[ing] on the right of reservation Indians to make their own laws and be ruled by them.' Williams v. Lee, supra at p. 220 of 358 U.S., at p. 271 of 79 S.Ct." (Emphasis supplied).

The Crow Tribe of Indians had no extradition code at any time pertinent to this matter and hence Turtle would not apply.

Further, the New Mexico Supreme Court reviewed Turtle in State Securities, Inc. v. Anderson, 84 N.M. 629, 506 P.2d 786, 788, wherein it held that the state court could obtain jurisdiction over Indian defendants by issuing and serving process upon them while they were on the reservation. It is interesting to note the New Mexico Supreme Court indicates that it had made a survey of the jurisdictional question and stated:

> "In an attempt to determine whether Indian immunity from process is necessary in this case to protect the right of reservation Indians to make their own laws and be

- 6 -

ruled by them, we have surveyed a number of cases and other authorities. According to some court decisions some powers reserved to Indians for their exclusive jurisdiction, and which may therefore be necessary for Indian self-government, are: jurisdiction to try an offense committed on the reservation by or against an Indian, Williams v. United States, 327 U.S. 711, 66 S.Ct. 778, 90 L ed. 962 (1946); extradition powers, if a tribe has codified and exercises its own extradition law, Arizona ex rel. Merrill v. Turtle, 413 F.2d 683 (9th Cir. 1969), cert. denied 396 U.S. 1003, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970) * * *." (Emphasis supplied.)

The New Mexico Supreme Court agrees with this Court's interpretation of Turtle in that the tribe must first have codified and exercised its own extradition laws before the rule in Turtle would apply.

Further, this Court in Bad Horse v. Bad Horse, 163 Mont. 445, 451, 452, 517 P.2d 893, in a related matter involving service of process within the exterior boundaries of the Fort Peck Indian Reservation, said:

"Art. III, Sec. 6 of the 1889 Montana Constitution provides:

"'Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character; and that right and justice shall be administered without sale, denial or delay.'

"Section 83-102, R.C.M. 1947, concerning jurisdiction provides:

"'The sovereignty and jurisdiction of this state extend to all places within its boundaries, as established by the constitution, excepting such places as are under the exclusive jurisdiction of the United States.'

" * * *

"Service was obtained pursuant to Rule 4, Montana Rules of Civil Procedure. Once the district court has assumed jurisdiction over the subject matter and process has been properly served, the defendant cannot throw up a shield around herself by claiming that the state process server cannot pierce the exterior boundaries of an Indian reservation and serve civil process therein.

"In the instant case the marriage 'contract' took place off the reservation. There has been no preemption by the federal government which could prevent the transfer of jurisdiction to the state. There is no disclaimer made and there is no infringement on the right of the tribe to govern itself. Indian country is not a federal enclave off limits to state process servers. Service of process extends to an Indian defendant served within the Fort Peck Reservation. State Securities, Inc. v. Anderson, 84 N.M. 629, 506 P.2d 786.

"The myth of Indian sovereignty has pervaded judicial attempts by state courts to deal with contemporary Indian problems. Such rationale must yield to the realities of modern life, both on and off the reservation. As Judge Russell Smith recently observed in United States v. Blackfeet Tribe, (D.C.Mont.), 364 F.Supp. 192, 194:

"'The blunt fact, however, is that an Indian Tribe is sovereign to the extent that the United States permits it to be sovereign---neither more nor less.'

"Only by throwing off the strictures of Indian sovereignty can state courts enter the arena and meet the problems of the modern Indian. If Congress and the federal appellate courts have a better solution, let them come forward."

This Court in Bad Horse also relied on Anderson, the New Mexico case discussed heretofore.

Relator terminates his petition before this Court with this final plea:

"CONCLUSION: This Honorable Court should take jurisdiction hereof and grant relator relief under an appropriate writ. The matter of the protection of an individual's constitutionally guaranteed right to due process of law, as well as a definitive declaration of the jurisdictional authority and power of the State of Montana in regard to Indian reservations within its boundaries, are of great public interest and directly affect the impartial and effective maintenance of justice and the public's confidence in and respect for the courts. There is no other appeal or other adequate or speedy remedy at law available to the relator for the disposition of this issue." (Emphasis supplied.)

Individual rights, due process, impartial and effective maintenance of justice and the public confidence in and respect for the courts are paramount in the resolution of these kind of matters. However, these rights and duties are owed to all citizens

not only those residing within the exterior boundaries of an Indian reservation. The citizens of Montana generally and Big Horn County particularly would be grossly deprived if under the guise of individual due process they not only had no speedy, adequate, remedy but no remedy at all. This in effect is the position of relator. The federal authorities have no jurisdiction pursuant to 18 U.S.C. §§ 1151 through 1165, as the crime was not committed in Indian country as defined in 18 U.S.C. § 1151. Here, we do not have the situation to meet the requirements of Unlawful Flight to Avoid Prosecution, 18 U.S.C. §1073. Tribal Judge Frederick Knows His Gun had no authority to extradite or under Title 25, Code of Federal Regulations, to apprehend relator on behalf of the state of Montana for the crime of deliberate homicide.

Finding no interference with tribal self-government and that the state of Montana proceeded under the only remedy available, relator's petition for extraordinary relief is denied and dismissed.

_____
Justice

We Concur:

_____
Chief Justice.

_____

_____

_____
Justices.