No. 13338

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

LITTLE HORN STATE BANK,

Plaintiff and ~~Respondent~~ *Appellant*,

-vs -

ROBERT STOPS AND NORMA STOPS,

Defendants and Respondents.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellants:

Clarence T. Belue argued, Hardin, Montana

For Respondent:

Cate, Lynaugh, Fitzgerald and Huss, Billings, Montana
Thomas J. Lynaugh argued, Billings, Montana

---

Submitted: September 9, 1976

Decided: OCT - 7 1976

Filed: OCT - 7 1976

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from an order entering a permanent injunction against levying or executing upon the property of respondents within the Crow Indian Reservation. The injunction was ordered in the district court of Big Horn County.

This appeal adds another chapter to the never ending story of Indian jurisdiction. The relevant facts are as follows:

Respondents, members of the Crow Indian Tribe residing on the Crow Indian Reservation, obtained a loan from appellant bank located in Hardin, Montana, and failed to repay the loan. This commercial transaction took place at the bank which is located outside the exterior boundaries of the Crow Indian Reservation. Process was served upon respondents on the reservation. Thereafter appellant obtained a judgment in the district court of the thirteenth judicial district in the amount of $3,541.24. Following this judgment on February 18, 1976, execution was issued by the district court on February 23, 1976. The writ of execution was directed to the sheriff of Big Horn County, who proceeded to garnish the wages of respondents earned on the reservation but within Big Horn County. Respondents sought and obtained injunctive relief against the writ of execution. Appellant seeks to dissolve the permanent injunction and be allowed to levy upon the respondents' property and wages within the reservation.

Respondents did not attack the district court's subject matter jurisdiction or personal jurisdiction at the district court level or before this Court. Both of these issues have been laid to rest by Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S.Ct. 1267, 36 L Ed 2d 114, 119, and Bad Horse v. Bad Horse, 163 Mont. 445, 517 P.2d 893, cert. den. 419 U.S. 847, 95 S.Ct. 83, 42 L Ed 2d 76.

A review of the district court's jurisdiction had no

Indian jurisdictional dispute been involved, is useful to this decision. It has been a long standing doctrine that any court having jurisdiction to render a judgment also has the power to enforce that judgment through any order or writ necessary to carry its judgment into effect. U.S. ex rel. Riggs v. Johnson County, 6 Wall. 166, 18 L.Ed 768 (1868); Pam-to-Pee v. United States, 187 U.S. 371, 23 S.Ct. 142, 47 L.Ed 221 (1902); Hamilton v. Nakai, 453 F.2d 152, cert. den. 406 U.S. 945, 92 S.Ct. 2044, 32 L Ed 2d 332.

The United States Supreme Court defined "jurisdiction" at p. 773 in Riggs:

> " * * * Jurisdiction is defined to be the power to hear and determine the subject matter in controversy in the suit before the court, and the rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree. * * *

> "Express determination of this court is that the jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied. * * *" (Emphasis added.)

The Montana legislature enacted section 93-1106, R.C.M. 1947, which contains language analagous to this principle. We have interpreted section 93-1106 to confer upon a court, having proper jurisdiction, all the means necessary to carry the same into effect, and if the court has the power to make an order, it has jurisdiction to enforce that order. State ex rel. Eisenhauer v. District Court, 54 Mont. 172, 168 P. 522.

The district court initially sought to enforce its judgment by a writ of execution pursuant to section 93-5801 et seq., R.C.M. 1947. A writ of execution against property of a judgment debtor may be issued by the district court to the sheriff of any county in the state. Section 93-5809, R.C.M. 1947. Thus, a district court has statewide enforcement power under that section.

- 3 -

However, the writ must issue to the proper sheriff, since a sheriff has no authority to serve the writ outside of his county. Merchants Credit Service v. Chouteau Co. Bank, 112 Mont. 229, 114 P.2d 1074.

Absent the existence of the Crow Indian Reservation, there is no question that this writ of execution would be a valid means of enforcing the judgment of the district court. The property subject to the writ was located within Big Horn County, the writ was directed to the sheriff of Big Horn County, and all other essential elements of a valid writ of execution existed.

Respondents urge us to hold that a court having jurisdiction to render a judgment does not have the power to enforce that judgment because the property subject to such writ is located on the Crow Indian Reservation. In effect, they ask that the reservation be treated on an even par with our sister states. Such a situation would not be feasible, since the Crow Tribe does not provide for the honoring of state court judgments, nor is the full-faith and credit clause applicable to the tribe. Had the judgment debtor's property been located in a sister state, appellant bank could have obtained a judgment in that state by pleading the Montana judgment and showing the jurisdictional requirements. Such a conclusion is not available in our situation.

The task to be performed by this Court is to determine whether or not the State action taken in this case is acceptable under the doctrines concerning state jurisdiction over Indian reservations.

The United States Supreme Court has applied different rationale from time to time, and the recent court decisions must be read as a whole to arrive at the proper test to be applied in this case. The initial test was propounded in Williams v. Lee,

358 U.S. 217, 79 S.Ct. 269, 3 L Ed 2d 251, 254, which stated:

> " * * *Essentially, absent governing Acts of
> Congress, the question has always been whether
> the state action infringed on the right of
> reservation Indians to make their own laws and
> be ruled by them."

This test was apparently overruled by Kennerly v. District Court

of Montana, 400 U.S. 423, 91 S.Ct. 480, 27 L Ed 2d 507. However,

in McClanahan v. Arizona Tax Commission, 411 U.S. 164, 93 S.Ct.

1257, 36 L Ed 2d 129, 140, 141, the Court revived the Williams

test stating:

> " * * * It must be remembered that cases applying
> the Williams test have dealt principally with
> situations involving non-Indians. [Citations
> omitted.] In these situations, both the tribe and
> the State could fairly claim an interest in
> asserting their respective jurisdictions. The
> Williams test was designed to resolve this conflict
> by providing that the State could protect its
> interest up to the point where tribal self-govern-
> ment would be affected.
>
> " * * *
>
> " * * * This Court has therefore held that 'the
> question has always been whether the state action
> infringed on the right of reservation Indians to
> make their own laws and be ruled by them.'"

The Court still adheres to the Williams test as evidenced by the

recent decision of Fisher v. District Court of Montana, 44 U.S.L.W.

3940 (U.S. March 1, 1976), when the court applied the Williams

test, even though all parties were members of the Northern Cheyenne

Tribe, and the litigation arose on the reservation.

The Williams test is appropriate to review this appeal.

The litigation involves a member of the Crow Tribe residing on

the Crow Indian reservation and a nonmember, located off the

reservation. It is important to note that the transaction in

dispute arose off the reservation. Therefore, we must determine

whether state action, in the form of a writ of execution to en-

force a judgment rendered on a transaction arising outside the

reservation, interferes with the tribe's right to make its own

rules and be governed by them.

We hold that it does not.

The cases holding/such interference has occurred present
that
a combination of the transaction occurring on the reservation
and the tribal court providing jurisdiction over such matters.
In Williams the tribal court exercised jurisdiction over disputes
over commercial transactions arising on the reservation between
members and nonmembers.  In Security State Bank v. Pierre, 162
Mont. 298, 511 P.2d 325, the tribal court provided for civil
litigation between members and nonmembers.  In Fisher, the most
recent United States Supreme Court case so holding, the facts
relating to the child custody dispute all arose on the reservation,
and the Crow Tribe provided for custody litigation among members
(all parties were members of the Crow Tribe).  We note that in the
situation at hand the Crow Tribal Court only exercises jurisdic-
tion over civil litigation between members and nonmembers if both
parties so stipulate.

However, what is in issue in this case is the enforcement
of a valid judgment, not the proper court to initiate the litigation.
The transaction did not occur on the reservation as in the above
cases but outside the reservation boundaries.  The subject matter
jurisdiction was within the state court, not the tribal court.  The
Crow Tribe provides no means of enforcing state court judgments,
no method of attaching property of a state judgment debtor, and
is not subject to the full faith and credit clause as sister states
are.  Until the Crow Tribe has provided a means of such enforce-
ment or acted in some manner within this area, we fail to see how
tribal self-government is interfered with by assuring that reserva-
tion Indians pay for their debts incurred off the reservation.

The crucial  fact of this appeal is that the subject matter
jurisdiction lies with the state court, not the tribal court.  In

this case the tribal members elected to leave the reservation and conduct their affairs within the jurisdiction of the state courts.  When they do so they are submitting themselves to the laws of this state.  They cannot violate those laws and then retreat to the sanctuary of the reservation for protection. The cases analagous to the situation presented here are:  State Securities, Inc. v. Anderson, 84 N.M. 629, 506 P.2d 786, 789; Natewa v. Natewa, 84 N.M. 69, 499 P.2d 691, 693; and State ex rel. Old Elk v. District Court, ____Mont.____, 552 P.2d 1394, 33 St.Rep. 637 (1976).  In all of these cases the state court properly had jurisdiction over the dispute at hand and process was allowed on the reservation to bring the Indian defendant before the state court.

In Natewa, the wife, a Zuni Indian living in Wisconsin, brought a URESA action against her ex-husband, a Zuni Indian re-siding on the Zuni Indian Reservation in New Mexico.  The New Mexico Supreme Court upheld the New Mexico District Court's order directing the ex-husband to pay child support, saying:

> " * * * Appellant cannot interpose his
> special status as an Indian as a shield to pro-
> tect him from obligations that result from his
> marriage to appellee which had been entered into
> off the reservation. * * *"

In State Securities, a corporation brought suit to recover on notes contracted off the reservation by Navajo Indians.  The New Mexico Supreme Court allowed service upon the Indians while they were on the reservation, stating at p. 789:

> "State jurisdiction does not eliminate Indian
> jurisdiction, it exists concurrently with it.
> There is no interference with Indian self-
> government. * * *
>
> " * * *
>
> " * * * Exclusive jurisdiction in Indian courts,
> which do not necessarily apply state law, may
> result in shielding Indians from obligations
> incurred off the reservation."

We have taken a similar position in Old Elk, holding that

- 7 -

a sheriff of this state may serve a warrant for the arrest of an Indian on the reservation, when the crime has occurred off the reservation.

The respondents elected to be governed by the laws of this state when they left the boundaries of the reservation to obtain the loan from the appellant. This was not a case of a nonmember choosing to transact his business within the boundaries of the Indian reservation as in Williams, Kennerly, and Pierre.

The United States Supreme Court stated in Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S.Ct. 1267, 36 L Ed 2d 114, 119:

> " * * * Absent express federal law to the con-
> trary, Indians going beyond reservation boundaries
> have generally been held subject to nondiscrimin-
> atory state law otherwise applicable to all citi-
> zens of the state." [Citations omitted.]

Here the respondents did go beyond the boundaries of the Crow Indian reservation and the execution statutes are nondiscrimina-tory and are otherwise applicable to all citizens of Montana.

This appeal essentially boils down to whether the juris-diction granted in Mescalero is the same as that defined by the United States Supreme Court in Riggs and Pam-to-Pee, or is it merely the opportunity to render a judgment incapable of enforce-ment. The latter would be absurd. As the Court said in Pam-to-Pee, at p. 226:

> "The award of execution is a part, and an
> essential part, of every judgment passed by
> a court exercising judicial power. It is no
> judgment, in the legal sense of the term,
> without it. Without such an award the judgment
> would be inoperative and nugatory, leaving the
> aggrieved party without a remedy. It would be
> merely an opinion, which would remain a dead
> letter, and without any operation upon the rights
> of the parties * * *.'"

To avoid such an illogical situation we hold that a writ of execution from a state court is valid within the Indian reser-vation when such is a means of enforcing a valid judgment of that court.

As we stated in Old Elk at 643:

"Individual rights, due process, impartial and effective maintenance of justice and the public confidence in and respect for the courts are paramount in the resolution of these kinds of matters. However, these rights and duties are owed to all citizens not only those residing within the exterior boundaries of an Indian reservation. The citizens of Montana generally and Big Horn County particularly would be grossly deprived if under the guise of _individual_ due process they not only had no speedy, adequate remedy, but _no_ remedy at all."

As stated earlier, the state court was the only forum available to the appellant. The tribal court lacked subject matter jurisdiction. No federal jurisdiction could be invoked, since there was no federal question, no diversity of citizenship, and the amount in controversy was less than $10,000. The state court had the jurisdiction to render its judgment, not even the respondents contest this. Such would not be a judgment without the power to enforce the same. The only available and peaceful means of enforcement to the appellant was the writ of execution from the state court. Without such, the result would be a "catch-us-off-the-reservation" situation, which could possibly lead to breaches of the peace.

In _Old Elk_ we held that an Indian may not violate the criminal laws of this state while off the reservation, and then return to the sanctuary of the reservation and throw up his Indian status as a shield against enforcement of those criminal laws. We now hold the same is true for the civil laws of this state.

We are not unmindful of Annis v. Dewey County Bank, 335 F.Supp. 133 (1971) cited by respondents. The federal court cited authority from South Dakota and Minnesota in holding that state officials had no jurisdiction on Indian reservations either to serve process on an enrolled member or to enforce a state judgment. The law of this state is directly contrary and in accord with New Mexico, as evidenced by _Old Elk_. We do not agree with the law cited by the federal court in _Annis_, nor do we agree with

- 9 -

their rationale.

The decision of the district court is reversed and the injunction dissolved and vacated.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

_____
Hon. Robert Sykes, District
Judge, sitting in place of Mr.
Justice Gene B. Daly.

- 10 -