PAUL CORNETT, District Attorney Shawano and Menominee Counties
You have asked several questions concerning the relationship between Menominee County and the Menominee Indian Tribe. Your questions will be answered seriatim.
 1. Do state, county, and local law enforcement agencies have authority to execute warrants and bench warrants issued by the Menominee Tribal Court?
For the reasons that follow, it is my opinion that state law enforcement agencies now have no statutory authority to execute warrants issued by the Menominee Tribal Court.
The Menominee Tribe is a federally recognized Indian tribe. As such, it possesses the power to regulate its internal relations to the extent this power has not been qualified by federal law or affected by the unique relationship between Indian tribes and the United States. See generally 64 Op. Att'y Gen. 184 (1975); 66 Op. Att'y Gen. 115 (1977).
In United States v. Wheeler, 435 U.S. 313, 322 (1978), the Supreme Court held: "It is undisputed that Indian tribes have power to enforce their criminal laws against tribe members. Although physically within the territory of the United States and subject to ultimate federal control, they nonetheless remain a `separate people, with the power of regulating their internal and social relations.'" *Page 37 
It is therefore clear that Indian tribes like the Menominee Tribe have retained "a semi-independent position . . . not as states, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people." McClanahan v. ArizonaState Tax Comm'n, 411 U.S. 164, 173 (1973), quoting United Statesv. Kagama, 118 U.S. 375, 381-82 (1886), and that the primary governmental authority to exercise general jurisdiction over tribe members within reservation boundaries rests with the Menominee tribal government and the federal government. Accordingly, original warrants and bench warrants issued by the Menominee Tribal Court have similar status as warrants issued by jurisdictions other than the State of Wisconsin and its political subdivisions.
The authority of state law enforcement agencies to execute warrants or otherwise make a lawful arrest is governed by statute, Wagner v. Lathers, 26 Wis. 436 (1870); City of Madisonv. Two Crow, 88 Wis.2d 156, 276 N.W.2d 359 (Ct.App. 1979). Absent statutory authorization, an arrest may not be made under a warrant outside the territorial jurisdiction of the court or magistrate issuing the warrant. See Annot., 61 A.L.R. 377 (1929) "Territorial extent of power to arrest under a warrant." See also
62 Op. Att'y Gen. 209 (1973).
The duties and authority of state law enforcement officers to execute warrants are covered generally in ch. 968, Stats. The only distinction made in ch. 968 as to the locus or origin of a warrant as between the State of Wisconsin and other jurisdictions is in sec. 968.07, Stats., which provides:
(1) A law enforcement officer may arrest a person when:
 (a) He has a warrant commanding that such person be arrested; or
 (b) He believes, on reasonable grounds, that a warrant for the person's arrest has been issued in this state; or
 (c) He believes, on reasonable grounds, that a felony warrant for the person's arrest has been issued in another state; or
 (d) There are reasonable grounds to believe that the person is committing or has committed a crime. *Page 38 
This statute does not distinguish between particular law enforcement officers who may arrest pursuant to warrants, nor does it distinguish between the type of warrant involved. Section968.07 (1)(b), Stats., specifically authorizes such officers to arrest under warrants "issued in this state," but such arrests under warrants issued in another state are restricted to felony warrants under sec. 968.07 (1)(C), Stats. Thus, the Legislature has made specific provision for the execution of felony warrants issued in another state but has made no provision for the execution of warrants issued by tribal government. When sec.968.07, Stats., is read in pari materia with other ch. 968 sections, it is clear that the Legislature has not authorized state law enforcement officers to arrest persons pursuant to warrants issued by the Menominee Tribal Court.
I have also considered the Uniform Criminal Extradition Act, sec. 976.03, Stats., and find no authority therein to allow state law enforcement officers to arrest Menominee Tribe members who are fugitives from tribal court jurisdiction.
 2. An enrolled Menominee charged with committing a crime in Shawano County is apprehended by tribal authorities on the Menominee Indian Reservation. Must such a person be extradited pursuant to Sec. 976.03 Wis. Stats.?
Unquestionably, state courts do have jurisdiction to prosecute tribe members for crimes committed outside the reservation. Section 976.03, Stats., however, only applies to interstate extradition and, therefore, cannot be used to require the Menominee Tribe to turn over one of its members to state officials. To acquire personal jurisdiction over tribe members in such cases would require either waiting until such person voluntarily comes within the court's jurisdiction or is extradited pursuant to tribal ordinance. The Menominee Tribe has enacted an extradition ordinance which establishes procedures for securing the return of fugitives from state justice where a felony warrant for that person's arrest has been issued by the State of Wisconsin.
Most authority holds that a state cannot utilize self-help procedures by entering the Reservation and removing the individual without complying with tribal extradition procedures. The leading case is *Page 39 State of Arizona ex rel. Merrill v. Turtle, 413 F.2d 683 (9th Cir. 1969). There the court held Arizona had no authority to exercise extradition jurisdiction over Indians on the Navajo Reservation. An Indian resident of the reservation was wanted by the State of Oklahoma for an alleged crime committed in that state. Oklahoma requested extradition from the Governor of Arizona. A county sheriff arrested the individual on the reservation pursuant to a warrant of extradition issued by the Arizona Governor, and he brought a proceeding for a writ of habeas corpus.
The court began its analysis with the principle from Worcesterv. Georgia, 31 U.S. 515 (1832), that tribes historically were regarded as "distinct political communities." 413 F.2d at 684. The court then took notice of the intent of the Navajo Treaty of 1868 to vest exclusive jurisdiction in the Indians over their internal affairs. The court concluded that Arizona's exercise of extradition jurisdiction in such circumstances would "infringe on the right of reservation Indians to make their own laws and be ruled by them," 413 F.2d at 684, citing Williams v. Lee,358 U.S. 217, 220 (1959), and therefore was an unlawful exercise of its powers.
There likewise are cases which hold service of process on an Indian within reservation borders does not give state courts jurisdiction over an action allegedly occurring off the reservation, nor does the state (as opposed to the tribe) have jurisdiction to enforce a state court judgment against an Indian on the reservation. See, e.g., Annis v. Dewey County Bank,335 F. Supp. 133 (C.D. S.D. 1971); Francisco v. State, 113 Az. 427,556 P.2d 1 (1976); Martin v. Denver Juvenile Court, 177 Col. 261,493 P.2d 1093 (1972); Commissioner of Taxation v. Brun, 286 Minn. 43,174 N.W.2d 120 (1970); Benally v. Marcum, 89 N.M. 463, 553 P.2d 1270
(1976). See also American Indian Nat. Bank v. Red Owl,478 F. Supp. 302 (C.D. S.D. 1979).
The Montana Supreme Court in a criminal case has ruled that state courts can acquire personal jurisdiction through service of process on a reservation. In State ex rel. Old Elk v. DistrictCourt of Big Horn, 170 Mont. 208, 552 P.2d 1394 (1976), the court held that the arrest of a tribe member on the reservation by a state officer pursuant to a state warrant for a crime allegedly committed off the reservation was valid. The court refused to follow the holding of Turtle claiming *Page 40 
it only applied in situations where the tribe had passed an extradition ordinance. Unlike the Menominee Tribe and the Navajo Tribe, the Crow Tribe involved in Old Elk did not have an extradition ordinance. In a recent case, In Matter of LittleLight, 598 P.2d 572 (Mont. 1979), the Supreme Court of Montana used its holding in Old Elk to again uphold the validity of an arrest of an Indian made by state officers on a reservation. Seealso Bad Horse v. Bad Horse, 163 Mont. 445, 517 P.2d 893 (1974);Little Horn State Bank v. Stops, 170 Mont. 510, 555 P.2d 211
(1976); compare State Securities, Inc. v. Anderson, 84 N.M. 629,506 P.2d 786 (1973), with Benally.
In view of Turtle and Williams, the inescapable conclusion is that the exercise of state jurisdiction in the circumstances you describe would clearly interfere with rights essential to the Menominee's self-government as reflected through the tribe's enactment of a comprehensive extradition ordinance. It is therefore my opinion that neither the state nor Shawano/Menominee County officials have authority to enter the reservation to arrest tribe members or otherwise acquire personal jurisdiction over tribe members residing and located on the reservation in criminal matters occurring off the reservation. Tribe members leaving the reservation may find themselves subject to the jurisdiction of state courts through arrest and service of process.
 3. Are enrolled Indians residing on the Menominee Indian Reservation who otherwise qualify for public assistance residents of Menominee County for the purpose of obtaining public assistance (AFDC, relief, medical assistance, etc.)?
Such persons are residents of Menominee County for the purpose of obtaining public assistance from that county.
You will recall that Menominee County and the Town of Menominee were created as a result of termination. See Menominee Tribe ofIndians v. United States, 391 U.S. 404, 409-10 (1968), and the Menominee Termination Plan, 26 F.R. 3726 (April 29, 1961). The Menominee Reservation, which had been created by the Treaty of Wolf River in 1854 (10 Stat. 1064), but later modified by the Treaty of February 11, 1856 (11 Stat. 679), thus became coterminous with *Page 41 
Menominee County and the Town of Menominee, ch. 259, sec. 2 (1959) Wis. Sess. Laws 300-01, sec. 2.01 (39m), Stats.
On August 15, 1953, Pub.L. No. 280 (67 Stat. 558,28 U.S.C. sec. 1360, 18 U.S.C. sec. 1162) was enacted. It granted limited civil and general criminal jurisdiction to the State of Wisconsin in "all Indian country within the state except the Menominee Reservation." The Menominee subsequently were brought within the coverage of Pub.L. No. 280 but were removed again effective March 1, 1976. See 66 Op. Att'y Gen. 290 (1977). The Menominee Reservation was reestablished by the Menominee Restoration Act (87 Stat. 770, 25 U.S.C. secs. 903-903f), which repealed the Menominee Termination Act of June 17, 1954 (68 Stat. 250,25 U.S.C. sec. 891, et seq.). In 66 Op. Att'y Gen. 115 (1977), it is concluded that as a result of restoration the county and the reservation boundaries once again are coterminous for jurisdictional purposes.
As already indicated, the state has very limited jurisdiction within the Menominee Reservation even though the reservation is within the territorial jurisdiction of the state, Menominee County and the Town of Menominee. The legal status of Menominee County and the Town of Menominee was not affected by restoration. Although the county and town continue to exist, the restoration of the Menominee Tribe, the reestablishment of the Menominee Reservation, and the loss of most state jurisdiction within the Reservation following restoration, together, severely limit the regulatory impact that state statutes have in the Town and County of Menominee.
Tribe members, nevertheless, continue to be eligible for and entitled to certain services provided by the state and local government. In cases involving tribe members, where eligibility for public services has been at issue, the courts have uniformly held that tribe members residing on non-taxable reservation lands are entitled to participate in public assistance programs such as those you mention. See, e.g., Morton v. Ruiz, 415 U.S. 199
(1974); Acosta v. San Diego County, 126 Cal. App. 2d 455,272 P.2d 92 (Dist.Ct.App. 1954); State Board of Public Welfare v.Board of Com'rs, 262 N.C. 475, 137 S.E.2d 801 (1964). See also 37 Op. Att'y Gen. 213 (1948); 38 Op. Att'y Gen. 531 (1949). *Page 42 
 4. Are said persons likewise residents of Menominee County for the purpose of conferring jurisdiction on State courts for the establishment and enforcement of child support and prosecution of welfare fraud?
Although tribe members who reside upon the Menominee Reservation also are residents of Menominee County, residency alone does not confer jurisdiction upon state courts over such persons for the establishment and enforcement of child support and prosecution of welfare fraud cases. The State of Wisconsin has very limited jurisdiction over tribe members on the reservation in such matters.
The violation of child support orders and welfare fraud are crimes under Wisconsin law. See secs. 49.12, 52.05, 52.055, and939.12, Stats. It is settled that the State of Wisconsin has no criminal jurisdiction over tribe members who commit crimes on the reservation. State ex rel. Pyatskowit v. Montour, 72 Wis.2d 277,278, 240 N.W.2d 186 (1976). Compare Sturdevant v. State,76 Wis.2d 247, 254, 251 N.W.2d 50 (1977). See also State v. LaTender,86 Wis.2d 410, 431, 273 N.W.2d 260 (1979).
Also, the state has little, if any, jurisdiction over domestic relations involving Menominee Tribe members on the reservation.See generally, 37 Op. Att'y Gen. 213 (1948); cf. Fisher v.District Court of the 16th Judicial District, 424 U.S. 382
(1976); and Wisconsin Potowatomies, etc. v. Houston, 393 F. Supp. 719
(W.D. Mich. 1973). The establishment of child support involves both quasi-criminal and civil regulatory jurisdiction. Although some related enforcement activities also suggest that civil sanctions may be appropriate to effect compliance, the state nevertheless lacks jurisdictional authority to proceed in such matters in state court. State action in this regard clearly constitutes infringement on the right of the Menominees to make their own laws and to be ruled by them. Williams v. Lee, 358 U.S. 217
(1959). Cf. White Mountain Apache Tribe v. Bracker,100 S.Ct. 2580 (1980).
It follows that if the child support order violation or the welfare fraud matter arose on the reservation the state would have no jurisdiction to prosecute such crimes. Rather, the prosecution is within the province of the Menominee Tribe or the federal government *Page 43 
under the Assimilative Crimes Act, 18 U.S.C. sec. 13, and the General Crimes Act, 18 U.S.C. sec. 1152. Cf: United States v.Sosseur, 181 F.2d 873 (7th Cir. 1950); 69 Op. Att'y Gen. 22 (1980).
Unquestionably, state courts have subject matter jurisdiction to establish child support and to prosecute the violation of child support orders and welfare fraud actions where they arise outside the reservation. Where the tribe member involved has moved to the reservation subsequent to the entering of a valid court order or after the alleged fraud occurred, the state must utilize the same extradition procedures it utilizes in any other situation where a crime has been committed outside the reservation and the tribe member accused of that crime has removed to the reservation. (See discussion above concerning extradition from the Menominee Reservation under question number two.) In this context it must be kept in mind that if the child support order was entered or the welfare fraud occurred during the termination period when the state had jurisdiction over tribe members, those cases should now be considered the same as current cases which involve off reservation criminal conduct.
The seemingly anomalous conclusion reached herein that Menominee Tribe members are eligible for public assistance but may not be prosecuted by the state for welfare fraud which occurs on the reservation is not intended to suggest that the state has no control over such matters. There are at least two principal ways available to the state to deal with this problem. One is through the establishment of eligibility criteria and another is through contract with the Menominee Tribe.
Some programs, such as the Relief To Needy Indian Persons Program (sec. 49.046, Stats.), is funded exclusively with state dollars. Other programs, such as the Aid to Dependent Children Program (sec. 49.19, Stats.) and the Medical Assistance Program (sec. 49.43, et seq., Stats.) are funded through a combination of federal and state tax dollars. Through legislation and rules federally funded programs such as those under the Social Security Act, 42 U.S.C. sec. 301, et seq., entitle any individual to certain benefits provided that certain qualifications are met. The same is true under the Relief To Needy Indian Persons Program. It is therefore my opinion that regardless of the program, it is clear that tribe members must meet the state and *Page 44 
federal eligibility requirements, most of which can be legally applied to such persons notwithstanding their status as tribe members residing upon an Indian reservation. Obviously, if a person cannot meet some eligibility criteria because of his or her status as a tribe member residing upon a reservation, such criteria would not apply to that person. See, e.g., 37 Op. Att'y Gen. 213 (1948). Persons who are capable of but do not meet the eligibility requirements are obviously not entitled to either receive the benefit in the first instance or to continue to receive the benefit where there is a change in eligibility.
Also, it is my understanding that the state now contracts with the Menominee Tribe for the administration of several public assistance programs. It would appear that an effective way to address these jurisdictional problems may lie in the contractual relationship between the state and the tribe. For example, the Menominee Tribe could be asked to assume responsibility to ensure that eligibility requirements are met and that any violations are either punished by the tribe under tribal law or are corrected by the recovery of monies from recipients if they were received through fraud, mistake or similar circumstance.
 5. Is the District Attorney for Shawano and Menominee Counties authorized to establish and enforce child support obligations in the Menominee Trial Court?
The District Attorney for Shawano and Menominee Counties has no statutory authority to establish child support in Menominee courts but does have authority to enforce state court judgments in such courts where permitted by the tribe.
The district attorney in Wisconsin is a constitutional officer elected under Wis. Const. art. VI, sec. 4. The constitution, however, does not establish the duties of a district attorney. InJessner v. State, 202 Wis. 184, 194, 195, 231 N.W. 634 (1930), the court suggested that the district attorney has those generally recognized duties and functions belonging to the office in this country at the time of the adoption of the constitution. In State ex rel. Kurkierewicz v. Cannon, 42 Wis.2d 368, 378-80,166 N.W.2d 255 (1969), the court concluded that the office of district attorney was not one of inherent powers, but rather is subject to legislative enactments. *Page 45 
The Legislature has provided generally in sec. 59.47, Stats., and specifically in numerous other statutes, express duties for the office of district attorney. I have found no statute, however, that requires the district attorney to establish obligations and enforce judgments involving child support obligations in the Menominee Tribal Court. Section 59.47 (1), Stats., does provide, however: "The district attorney shall: (1) Prosecute or defend all actions, applications or motions, civil or criminal, in the courts of his [or her] county in which the state or county is interested or a party."
Undoubtedly, the Legislature did not have tribal courts in mind when referring to "courts of his [or her] county" but rather was concerned about state courts. The matters to which you refer, however, are without question actions in which the state is both interested and, in most instances of necessity, a party. Under sec. 59.47, Stats., and ch. 52, Stats., it is the duty of the district attorney to represent the state in matters involving support of dependents. It is my opinion that a district attorney does have the limited authority as the principal quasi-judicial legal representative for the state and county to represent the state in actions seeking execution of state court judgments in the Menominee tribal court. This conclusion is strengthened by the absence of anything in the statutes to preclude the district attorney from exercising discretion with regard to making appearance on behalf of the county or state in tribal courts. This analysis, of course, assumes that the Menominee Tribe has enacted a tribal law giving credit to state court judgments ordering support of dependents. For the reasons stated in response to the preceding question, otherwise valid state court judgments based on state laws in this subject area cannot beenforced against tribe members who are located upon the reservation unless so provided by the Menominee Tribe.
You next ask several questions relating to juvenile matters.
 6. In the absence of a contract, is the Menominee County Department of Social Services responsible for providing services to the Menominee Tribal Court in juvenile matters?
Menominee County has no statutory obligation to provide services to the Menominee Tribal Court in juvenile matters. It is my understanding *Page 46 
that the primary focus of your concern now is the responsibility of Menominee County to perform intake services for the Menominee Tribal Court. The Children's Code, ch. 48, Stats., requires several types of specifically described intake services. There is nothing in the Children's Code, however, to indicate legislative intent to require Menominee County to perform intake services for the Menominee Tribal Court.
As already indicated, the Menominee Tribe and the federal government have exclusive jurisdiction over virtually all matters involving enrolled tribe members where the cause of action arises within the boundaries of the Menominee Reservation. Since the reservation boundaries and the county boundaries are coterminous for jurisdictional purposes, Menominee County has no jurisdiction to enforce the Children's Code against tribe members residing upon the reservation, i.e., within the county. Cf. 37 Op. Att'y Gen. 213 (1948); Fisher v. District Court of the 16th JudicialDistrict, 424 U.S. 382 (1976); Wisconsin Potowatomies, etc. v.Houston, 393 F. Supp. 719 (W.D. Mich. 1973). It follows that the Menominee Tribe has the exclusive authority to deal with matters involving children who are enrolled tribe members residing on the reservation and also has the primary responsibility for making necessary government services available in such cases. It is true, as I indicated in answer to your third question, that certain public assistance benefits administered by the county which constitute individual entitlements are still available to tribe members notwithstanding the jurisdictional relationship that exists. That analysis, however, does not require the same conclusion when considering the delivery of services to the Menominee court, a tribal institution. Services that may be needed to allow the Menominee court to perform its responsibilities under the authority of tribal jurisdiction are the responsibility of the tribe.
In your next question you state:
 7. The Circuit Court for Menominee-Shawano Counties is a multicounty court. The boundar[ies] of the Menominee Indian Reservation and Menominee County overlap. Does the Menominee County Division [of circuit court] have jurisdiction over a juvenile who is an enrolled Indian residing on the Menominee Indian Reservation? *Page 47 
For the reasons stated heretofore, the Menominee-Shawano court does not have jurisdiction over a juvenile who is an enrolled Indian residing on the Menominee Indian Reservation in actions arising on the reservation.
 8. When a juvenile is an enrolled Indian residing on the Menominee Indian Reservation [and] is charged with committing a delinquent act in Shawano County, Sec. 48.185 provides that the matter may be venued in Shawano County as the county where the violation occurred. May the matter also be venued in Menominee County as the county where the child resides?
Section 48.185, Stats., provides in part:
 Venue for any proceeding under ss. 48.12, 48.125, 48.13, 48.135, 48.14 and 48.18 may be in any of the following: the county where the child resides, the county where the child is present or, in the case of a violation of a state law or a county, town or municipal ordinance, the county where the violation occurred.
Section 48.12, Stats., provides for jurisdiction over children alleged to be delinquent. The court has exclusive jurisdiction, except as provided in secs. 48.17 and 48.18, Stats., over any child twelve years of age or older who is alleged to be delinquent because he or she has violated any federal or state criminal law. Unquestionably, proper venue may be had in either Shawano or Menominee County under the circumstances you describe. Since the counties of Menominee and Shawano are combined for judicial purposes, having a single court, it would appear to make little difference in which county venue is established. Sec.48.035, Stats.
In your final question, you ask:
 9. Is such a juvenile referred to in [the preceding question] a resident of Menominee County for the purpose of assessment of costs referred to in Sec. 46.26 (4) (b) Wis. Stats.?
This question concerns financial liability for juveniles who have been found delinquent by the Menominee-Shawano Circuit Court *Page 48 
and who are in state correctional facilities like Ethan Allan School or Lincoln Hills School. Previously, the State of Wisconsin rather than Menominee or Shawano County paid for the costs of such juveniles who are in state secured correctional facilities. As of January 1, 1981, counties are financially liable for the cost of all care, services and supplies provided by the Department of State Correctional Facilities. Ch. 34, sec. 827, Laws of 1979 (sec. 46.26 (4)(a), (d)). Section 46.26, Stats., fixes financial liability for costs in situations where one court has multi-county jurisdiction over juveniles. Section 46.26 (4)(b), Stats., provides in part: "In multi-county court jurisdictions, the county of residency within the jurisdiction shall be liable for costs" for each person receiving Department services under secs. 48.34 and 51.35 (3), Stats. Tribe members residing upon the Menominee Reservation are also residents of Menominee County. It follows that juvenile tribe members are residents of Menominee County under the circumstances you describe for purposes of assessment of costs under sec. 46.26 (4)(b), Stats.
BCL:JDN