JUSTICE TRIEWEILER
dissenting.
I dissent from that part of the majority opinion which concludes that Ruben Horseman’s arrest by a Montana Game Warden did not violate the extradition laws of the Rocky Boy’s Reservation.
The Chippewa-Cree Law and Order Code, Title IV, Part 1, Section 1.12, provides in relevant part that:
(2) An alleged fugitive may not be turned over to state or federal authorities until after the person has been afforded a hearing in Tribal Court to determine whether probable cause exists as to the allegation of a crime by that person.
The District Court ignored the tribal extradition law based on its erroneous conclusion that it had no evidence that the Tribe’s extradition rules had been violated. However, Rule 202(d), M.R.Evid., provides that:
A court shall take judicial notice:
(1) of the common law, constitutions and statutes of the United States and of this and every other state, territory and jurisdiction of the United States. [Emphasis added].
The Rocky Boy’s Reservation is a jurisdiction within the United States and the District Court had an obligation to take judicial notice of the extradition procedure provided for in its Law and Order Code.
The majority opinion disposes of Horseman’s invocation of the Tribe’s extradition procedure based on decisions which have nothing to do with this issue. The U.S. Supreme Court’s ill-advised decision in Duro v. Reina (1990), 495 U.S. 676, 110 S. Ct. 2053, 109 L. Ed. 2d 693, dealt with a tribe’s authority to prosecute non-members for misdemeanors committed on the reservation. It had nothing to do with the Tribe’s authority to establish reasonable extradition procedures for those who commit crimes elsewhere but are apprehended on the reservation.
Neither is the fact that tribes have undisputed authority to exclude undesirable people from their land relevant. The fact in this case is that the Tribe has established a procedure by which undesirable *98 people may be excluded, and it was not followed. The fact that a tribal law enforcement officer participated in the violation of the Tribe’s extradition procedure makes no difference. It was still violated, and its violation was an infringement on the sovereignty of the Rocky Boy’s Reservation. Such infringement should not be tolerated, and this fact alone is a sufficient basis for invalidating Horseman’s arrest.
I agree with the decision of the Ninth Circuit Court of Appeals in Arizona ex rel. Merrill v. Turtle (9th Cir. 1969), 413 F.2d 683, when it held that the State of Arizona could not ignore the Navajo Tribe’s extradition laws. In that case, the Ninth Circuit stated that:
We have been referred to no specific Congressional action limiting the power of the Navajo tribal government to deal with the extradition of Indians resident within the Reservation or granting to the State of Arizona the authority to exercise extradition jurisdiction over such residents. In these circumstances, Arizona’s right to exercise the jurisdiction claimed must be determined in light of whether such exercise would “infring[e] on the right of reservation Indians to make their own laws and be ruled by them,” (Williams v. Lee, supra at p. 220 of 358 U.S. [217], at p. 271 of 79 S.Ct. [269, 3 L.Ed.2d 251]) or, as the Williams’ test was characterized by the court in Kake, Organized Village of v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1961), “whether the application of that law would interfere with reservation self-government.” Id. at p. 67, 82 S.Ct. at p. 567.
Applying these considerations, we conclude that Arizona’s exercise of the claimed jurisdiction would clearly interfere with rights essential to the Navajo’s self-government. The essential and intimate relationship of control of the extradition process to the right of self-government was recognized long ago in Kentucky v. Dennison, 24 How. 66, 16 L.Ed. 717 (1861), holding that there is no power, state or federal, to compel a state to perform its constitutional duty of extradition.
In 1956, the Navajo Tribal Council, the tribal legislative body, adopted a Resolution providing procedures for Indian extradition. ... The Tribe has thus codified and does now exercise its extradition power. This power cannot now be assumed by or shared with the State of Arizona without “infringing] on the right of reservation Indians to make their own laws and be ruled by them.” Williams *99 v. Lee, supra at p. 220 of 358 U.S., at p. 271 of 79 S.Ct. [Footnote omitted].
Merrill, 413 F.2d at 685-86.
Likewise, we have been referred to no federal action which would limit the right of the Rocky Boy’s Reservation to deal with the extradition of individuals found and arrested on tribal land for crimes which were committed elsewhere. To limit that authority by judicial decision, as the majority has done, clearly interferes with the rights essential to the Tribe’s self-government. Therefore, I dissent from that part of the majority opinion which concludes that Horseman’s arrest was not illegal because it did not violate the extradition procedures established by the Chippewa-Cree Law and Order Code.
JUSTICE HUNT joins in the foregoing dissent.