RICHARD STADELMAN, District Attorney Shawano and MenomineeCounties
You requested my advice regarding a number of questions involving taxation within Menomonee County. The focus of your inquiry is the recent United States Supreme Court decision inBryan v. Itasca County, 426 U.S. 373, 96 S. Ct. 2102,48 L. Ed. 2d 710 (1976).
In Bryan, the Court held that P.L. 280 (28 U.S.C. sec. 1360a), was not intended by Congress to confer authority upon Minnesota to extend her general civil laws to Indian persons and Indian land within the Leech Lake Reservation. The Court held invalid the state personal property tax as applied to a mobile home of an enrolled Chippewa Indian where such mobile home was located on land held in trust for tribal members. Bryan, however, has limited effect on taxation of Menominee Indians and Menominee property because the Menominee termination and restoration legislation, rather than P.L. 280, has been the basis upon which Wisconsin has exercised taxation jurisdiction over Menominee persons and land within Menominee County. *Page 291 
You will recall that the Menominee Termination Act of June 17. 1954 (68 Stat. 250, 25 U.S.C. secs. 891-902, repealed), was intended. in part, to discontinue the reservation status of Menominee tribal land. Section 9 of that Act (25 U.S.C. sec. 898) authorized the state to begin taxing Menominee land and other assets, together with income derived therefrom, on the effective date of termination, April 30, 1961.
In addition, section 10 of the Termination Act (25 U.S.C. sec. 899) provided that after title to tribal property had been transferred from the United States to Menominee Enterprises, Inc., "the laws of the several States shall apply to the tribe and its members in the same manner as they apply to other citizens or persons within their jurisdiction." It is my opinion that after the land was transferred on April 30, 1961, members of the Tribe became subject to all state and local taxes which theretofore were only applicable to nonIndian persons within the territory which became Menominee County. I realize that rights protected by treaty were not affected by the termination legislation but a review of the relevant treaties has not revealed any treaty-protected rights relating to taxation. Thus, it is my opinion that on April 30, 1961, the Termination Act authorized the state to begin imposing state and local taxes upon Menominee persons and Menominee property.
On December 22, 1973, the Menominee Restoration Act (87 Stat. 770, 25 U.S.C. sec. 903 et seq.) repealed the Termination Act and reinstated all rights and privileges of the Tribe and its members under federal treaty, statute, or otherwise, which may have been diminished or lost pursuant to termination. Sec 64 Op. Att'y Gen. 184 (1975).
In 66 OAG 115 (1977) it was stated that "When the termination and restoration legislation are read against the backdrop of tribal sovereignty, I believe it is clear that Congress intended to restore to the Tribe the full rights of tribal self government which the Tribe enjoyed prior to the passage of the Menominee Termination Act, including the fundamental right to govern its internal affairs within the same territory that constituted the Reservation prior to termination." The territory referred to is Menominee County and the Town of Menominee. It is my opinion that Menominee County is coterminous with the present Menominee Reservation for purposes of resolving the jurisdictional questions considered herein. *Page 292 
The Restoration Act contains several provisions that relate to taxation. Section 3(d) (25 U.S.C. sec. 903a(d)) provides: "Except as specifically provided in this Act, nothing contained in this Act shall alter any property rights or obligations, . . . or any obligations for taxes already levied."
Section 6 is concerned with the transfer of assets owned by Menominee Enterprises, Inc., to the United States in trust for the Menominee Tribe. Subsection (b) (25 U.S.C. sec. 903d(b)) provides that assets transferred into trust status "shall be subject to all valid existing rights, including, but not limited to, liens, outstanding taxes (local, State, and Federal), . . . and any other obligations *** All assets transferred under this section shall, as of the date of transfer, be exempt from all local, State, and Federal taxation." On April 22, 1975, all assets owned by Menominee Enterprises, Inc., which included most real property located within Menominee County, were placed into trust. Thereafter, the state and its local political subdivisions were no longer authorized to assess and collect new taxes from such property. Property taxes levied prior to April 22, 1975, however, would be a legal obligation of Menomonee Enterprises, Inc.
Subsection (c) (25 U.S.C. sec. 903d(c)) provides for the transfer of real property owned by members of the Menominee Tribe into trust status. As with tribal property, this property would also be subject to all valid existing rights including outstanding taxes. All assets so transferred shall, as of the date of transfer, be exempt from all local, state and federal taxation Because property owned by members of the Tribe has been transferred into trust at various dates, it is necessary for the county to consider each such transfer to determine the effective date for tax exemption on such property.
Congress did not, in the Restoration Act, expressly deal with other taxation matters relating to the Menomonee Tribe and tribal members. For the most part the problem is not whether the Tribe and tribal members are subject to other forms of taxation; rather, the problem is to determine the effective date for tax exemption. Recent Supreme Court decisions make clear that a state's authority to impose taxes on Indian tribes, tribal members, or tribal property within reservation boundaries depends on clear congressional authorization. See, e.g., Byran v. ItascaCounty, supra; McClanahan v. Arizona Tax Commission, 411 U.S. 164,93 S.Ct. 1257, *Page 293 36 L. Ed. 2d 129 (1973); Mescalaro Apache Tribe v. Jones, 411 U.S. 145,93 S. Ct. 1267, 36 L. Ed. 2d 114 (1973); Moe v. Confederated Salish Kootenai Tribes, 425 U.S. 463, 96 S. Ct. 1634, 48 L. Ed. 2d 96
(1976).
In 64 Op. Att'y Gen. 184 (1975), I concluded that the Restoration Act provided clear authority for the state to continue to exercise jurisdiction over the Menominee Tribe and land until such time as the federal government, pursuant to implementation of the Restoration Act, officially notified the state that it, together with the Menominee Tribe, had assumed such jurisdiction. In that opinion I deferred comment concerning what transitional jurisdiction the state acquired by virtue of the Restoration Act.
Section 3(b) (25 U.S.C. sec. 903a(b)) provides: "The [Termination] Act, is hereby repealed and there are hereby reinstated all rights and privileges of the tribe or its members under Federal treaty, statute, or otherwise which may have been diminished or lost pursuant to such Act." It is my opinion that this provision reestablished the tax immunities that the Menominee Tribe and tribal members enjoyed prior to termination. Under this analysis the only taxation jurisdiction authorized by the Restoration Act is taxation upon real property owned by members of the Tribe which has not been placed into trust status.
In summary, the following dates referred to herein are significant for taxation purposes:
1. April 30, 1961 (The effective date of the Menominee Termination Act) The state commenced exercising general civil and regulatory jurisdiction including the power to impose all types of taxes on Indians and Indian property within Menominee County.
2. December 22, 1973 (The Menominee Restoration Act enacted) The state was authorized to continue to tax real property until placed into trust status but lost its authority to tax the Menominee Tribe and tribal members.
3. April 22, 1975 Real property and other assets owned by Menominee Enterprises. Inc., were placed into trust status and were no longer taxable by the state. Some real property owned by tribal members was also placed into trust status on this date and at various dates thereafter which also removed such land from taxable status. *Page 294 
To the extent that the state or county relied on Public Law 280 as the basis for taxation of Menominees or Menominee property after December 22, 1973, but before the retrocession of jurisdiction, which was effective March 1, 1976, Bryan v. ItascaCounty makes clear that such reliance was misplaced. If the state continued to collect personal income taxes from Menominees who work and reside within Menominee County after December 22, 1973, such individuals may be eligible for refunds of such taxes withheld from wages. I would suggest that you advise those individuals to contact the Wisconsin Department of Revenue for procedures to follow in claiming any refunds. In any case, any further withholding should be immediately stopped.
I have enclosed for your information recent guidelines which were prepared by the Wisconsin Department of Revenue shortly after the Bryan decision was rendered regarding taxation of Indians in Wisconsin. Those guidelines reflect the Revenue Department's interpretation of the law as it applies to Indians and reservations generally. I understand, however, that those guidelines may have been modified in some instances to accommodate the unique status of the Menominees with respect to certain taxation matters. Detailed information can be secured directly from the Department of Revenue.
You also request advice concerning the definition of "Indian" for purposes of taxation. You will recall that by letter dated February 27, 1976, I advised you concerning this question as well as other jurisdictional questions involving the Menominee Reservation. There, I suggested that you rely on tribal membership to determine who is an Indian where jurisdiction depends on such information. Membership in the Tribe as evidenced by either a name on the tribal roll or confirmation of such fact by the Tribe would probably be considered authoritative evidence that the state does not have jurisdiction over that person for taxation purposes.
You also requested my advice concerning the level of services to be provided by Menominee County and the Town of Menominee in view of the reduced tax base caused by the return of most property to trust status. Although jurisdiction within the county has been affected by restoration, the legal status of the county and town as political subdivisions of the state has not been affected by restoration. Consequently, the county and town continue to be responsible for *Page 295 
services within the county, albeit in most cases at a reduced level. For example, primary responsibility for law enforcement has shifted from the state to the Tribe and federal government. I assume this shift in responsibility has permitted the county to reduce its law enforcement budget. With respect to law enforcement you specifically ask whether the county remains responsible for patrolling public rights-of-way within the county. As stated in 66 OAG 115 (1977), the county's responsibility includes the protection and preservation of all public rights-of-way within Menominee County regardless of where such rights-of-way are located.
With respect to services generally should be noted that Congress anticipated that restoration would require ongoing cooperation among the various governmental entities responsible for delivery of services within Menominee County. Pursuant thereto the Menominee Tribe and the county, town and state governments have entered into cooperative agreements effecting the delivery of many governmental services. Continued cooperation could result in the sharing of costs among the various governmental entities with the result that essential governmental services will not be impaired as a result of restoration. I believe the restoration legislation authorizes intergovernmental agreements for the delivery of services. If, however, there is any question regarding the. authority of the county to enter into a specific agreement with the Tribe or federal government, you may wish to request clarification from this office.
I trust that this information will be helpful to you in carrying out your responsibilities as corporation counsel for Menominee County. If additional information is needed, please do not hesitate to call upon this office for assistance.
BCL:JDN