DANIEL G. SMITH, Department of Revenue
You have asked several questions relating to the enforcement of Wisconsin's cigarette tax statutes, sec. 139.30, et seq., Stats., against Indian persons and Indian tribes within Indian reservations. Your questions will be answered seriatim. Before turning to each specific question, however, it may be helpful to outline the state's general taxing jurisdiction over Indian persons and Indian tribes within reservation boundaries since all your questions involve issues of jurisdiction.
For the following reasons, it is my opinion that the state's jurisdiction to collect its taxes from Indian persons and Indian activities within reservations is extremely limited.
As indicated in previous opinions (see e.g., 65 Op. Att'y Gen. 276 (1976); 64 Op. Att'y Gen. 184 (1975)), there are certain basic legal principles which govern the resolution of jurisdictional questions concerning Indians and Indian lands. First, a federally recognized Indian tribe is a legitimate governmental entity possessing attributes of sovereignty over both its members and its territory, and as such has the power to regulate its internal and social relations. Second, the federal government has authority to qualify this power. Third, state law can have no role to play within a reservation's boundaries except with the *Page 152 
consent of the tribe itself or in conformity with treaties and acts of Congress or where the courts have determined that state law shall apply.
Recent Supreme Court decisions make clear that a state's authority to impose taxes on Indian tribes, tribal members, or tribal property within reservation boundaries depends on clear congressional authorization. See, e.g., Bryan v. Itasca Cty.,Minnesota, 426 U.S. 373 (1976); Moe v. Confederated Salish andKootenai Tribes, Etc., 425 U.S. 463 (1976); McClanahan v. StateTax Commission of Arizona, 411 U.S. 164 (1973); Mescalero ApacheTribe v. Jones, 411 U.S. 145 (1973).
The Supreme Court outlined the general framework by which state jurisdiction in taxation cases is to be analyzed, in McClanahan. The Court, as a starting point, noted that "the trend has been away from the idea of inherent Indian sovereignty as a bar to state jurisdiction and toward reliance on federal pre-emption." Tribal sovereign status, however, was strongly reaffirmed by the Court in two recent cases, Santa Clara Pueblo v. Martinez,436 U.S. 49 (1978), and United States v. Wheeler, 435 U.S. 313
(1978). Although tribal sovereignty is still relevant, "because it provides a backdrop against which the applicable treaties and federal statutes must be read," it is not the controlling focus of analysis. McClanahan at 172. Rather, it is necessary to carefully analyze the applicable federal statutes to determine whether state jurisdiction has been authorized. Additionally, where the issue involves only state jurisdiction over non-Indian persons within reservation boundaries, the state statute need only satisfy the test laid down in Williams v. Lee, 358 U.S. 217
(1958), viz., that it not infringe on the rights of reservation Indians to make their own laws and be ruled by them.
Also, in Mescalero Apache Tribe v. Jones, the Court concluded that Indian tribes do not enjoy absolute tax immunity outside reservation boundaries. The Court upheld the imposition of a state tax on the gross receipts of a ski resort operated by the Mescaleros on land located outside the boundaries of their reservation, although the Court struck down the state's use tax imposed on the personalty installed in the construction of the ski lifts. *Page 153 
Although McClanahan outlined the general framework by which state jurisdiction in taxation matters is to be analyzed, the Court specifically did not consider federal jurisdictional legislation such as Pub.L. No. 280, 67 Stat. 588
(28 U.S.C. sec. 1360 and 18 U.S.C. sec. 1162), or deal with "exertions of state sovereignty over non-Indians who undertake activity on Indian reservations." 411 U.S. at 168.
Bryan concerned one question reserved in McClanahan; namely, whether the grant of civil jurisdiction to the states conferred by section four of Pub.L. No. 280 (28 U.S.C. sec. 1360 (a)), is a congressional grant of power to the states to tax reservation Indians. In answering no, the Court concluded, without qualification, that Pub.L. No. 280 does not confer general state regulatory control over Indian reservations.
The Court held that the congressional grant of jurisdiction to the states through Pub.L. No. 280 was not authorization to the states to subordinate reservation Indians "to the full panoply of civil regulatory powers, including taxation, of state and local governments" because Congress did not clearly express such an intent. Id. at 388. In writing the opinion for a unanimous Court Justice Brennan stated:
 [C]ongress knew well how to express its intent directly when that intent was to subject reservation Indians to the full sweep of state laws . . . . [I]f Congress in enacting Pub.L. No. 280 had intended to confer upon the States general civil regulatory powers . . . over reservation Indians, it would have expressly said so.
Id. at 389-90. Accordingly, the Court held invalid the state's personal property tax as applied to the mobile home of an enrolled Chippewa Indian where such mobile home was located on land held in trust for tribal members. Compare 65 Op. Att'y Gen. 276 (1976).
When read together, McClanahan and Bryan make clear that in view of federal pre-emption there is now a presumption against state taxing authority over Indians and Indian property located within an Indian reservation and that Pub.L. No. 280 does not alter or otherwise affect that presumption.
In Moe v. Confederated Salish and Kootenai Tribes, Etc.,425 U.S. 463 (1976), the Court, citing McClanahan and MescaleroApache Tribe v. Jones, concluded that Montana could not assess a *Page 154 
vendor's license fee against an Indian for selling cigarettes on "reservation land," and could not apply the state cigarette sales tax on "reservation sales" by Indians to Indians. The Court noted that the basis for the invalidity of the taxing measures at issue, which the Court "found to be inconsistent with existing federal statutes," was the Supremacy Clause, U.S. Const. art. VI, cl. 2. Id. 425 U.S. at 481, fn. 17.
The Court noted also that the Montana cigarette tax was a direct tax on the retail consumer pre-collected by the seller for the purpose of convenience and facility only. Id.425 U.S. at 482. The Court held that the Indian retailer, thus, could be required to collect the tax for the state on sales to non-Indians.
With these general guidelines in mind, each of your several questions will now be considered.
1. You ask whether your Department can refuse to issue a permit under sec. 139.34, Stats., to an Indian distributor of cigarettes who has his or her place of business on a Wisconsin Indian reservation and declares an intention to buy cigarettes outside this state and sell them to Indian retailers having places of business on Indian reservations in Wisconsin without paying the occupational tax on cigarettes imposed at sec. 139.31, Stats.
The underlying issue in all of your questions is whether the state cigarette tax laws are applicable to Indian tribes and Indian persons on Indian reservations. Accordingly, your questions will be answered in the context of state taxing authority. This analysis, therefore, does not necessarily govern other jurisdictional questions.
Wisconsin's cigarette tax laws, sec. 139.30, et seq., Stats., impose an "occupational tax" on any person selling cigarettes within the state (sec. 139.31 (1), Stats.), a "use tax" equivalent to the occupational tax on any person using cigarettes in this state if the occupational tax has not been paid on such cigarettes (sec. 139.33 (1), Stats.), and requires individuals engaged in the distribution and sale of cigarettes other than at retail to secure a state permit (sec. 139.34 (1) (a), Stats.). Clearly, the purpose of this statutory scheme is to ensure that taxes are paid on all cigarettes entering the state unless specifically exempted. *Page 155 
Section 139.34 (1) (a), Stats., makes it unlawful for any person to "sell cigarettes in this state as a distributor, jobber, vending machine operator or multiple retailer and no person shall operate a warehouse in this state for the storage of cigarettes for another person without first obtaining the proper permit to perform such operations from the department of revenue."
Pursuant to sec. 139.34 (1)(b), Stats., the Department can refuse to issue a permit to any person not of "good moral character." Subsection (c) lists several factors to consider in determining whether an applicant is of good moral character. Unless an applicant is found to be not of good moral character, the Department cannot refuse to issue a permit under sec. 139.34, Stats.
Section 139.31 (1), Stats., provides, in part:
 An occupational tax is imposed on the sale, offering or exposing for sale, possession with intent to sell or removal for consumption or sale of cigarettes or other disposition for any purpose whatsoever. All cigarettes received in this state for sale or distribution within this state, except cigarettes actually sold as provided in sub. (3), shall be subject to such tax.
Subsection (3) lists various exceptions to the occupational tax.
Your first question requires consideration of both the permit requirement of sec. 139.34 (1) (a), Stats., and the application of the occupational tax set forth in sec. 139.31 (1), Stats. For the reasons that follow, it is my opinion that the state has no jurisdiction to require an Indian distributor of cigarettes doing business exclusively on a Wisconsin Indian reservation to secure a permit for sale of cigarettes. It is also my opinion that such sales are not subject to the occupational tax imposed by sec.139.31, Stats.
The sec. 139.31 occupational tax is a tax on carrying on the business of selling cigarettes within the state. An occupational tax is thus imposed upon the seller and not on the product or the purchaser. See Berlowitz v. Roach, 252 Wis. 61, 67, 30 N.W. 256
(1947); see also 29 Op. Att'y Gen. 283 (1940).
The United States Supreme Court in the leading cases discussed heretofore made clear that a general exemption from state taxes extends to Indian tribes and Indian persons within reservation boundaries. As indicated, the Court in Moe v. Confederated Salishand *Page 156 Kootenai Tribes, Etc., 425 U.S. 463 (1976), specifically struck down Montana's personal property tax on property located within the reservation; the vendor license fee sought to be applied to a reservation Indian conducting a cigarette business on reservation land; and the cigarette sales tax as applied to on-reservation sales by Indians to Indians. It follows that where the burden of the tax sought to be imposed is on an Indian person or Indian tribe located within reservation boundaries, such tax cannot be lawfully imposed. Since the sec. 139.31, Stats., occupational tax is on the individual seller, the above cited cases make such taxes unenforceable against an Indian seller on the reservation.See also Warren Trading Post v. Arizona Tax Com., 380 U.S. 685
(1965).
The sec. 139.34, Stats., permit required for all distributors is intended to give the Department of Revenue additional control over the sale of cigarettes and to facilitate the collection of the occupational tax. It follows that if the state has no jurisdiction to prevent an Indian distributor from selling unstamped cigarettes, it has no jurisdiction to prosecute that person for not securing a sec. 139.34, Stats., permit.
2. You next ask if the answer to question one is yes, or if the Indian person does not apply for a permit and proceeds to distribute cigarettes, is he or she subject to the cigarette taxes imposed at sec. 139.31 or sec. 139.33, Stats.
The answer to this question as it concerns sec. 139.31, Stats., is no for the reasons stated in question one above.
Section 139.33 (1), provides in part:
 A use tax is imposed and levied upon the use of cigarettes in this state by any person for any purpose if the occupational tax imposed by s. 139.31 has not been paid on such cigarettes. Such tax is levied and shall be collected at the same rates as provided for in s. 139.31.
It is clear that this use tax is intended to complement the occupational tax discussed above.
Use taxes together with sales taxes constitute a general taxing plan under which everything is taxable at the retail level unless specifically exempted. See Dept. of Revenue v. Milwaukee RefiningCorp., 80 Wis.2d 44, 257 N.W.2d 855 (1977). The tax burden of a use tax is *Page 157 
on the consumer. Unlike the general retail sales tax (sec. 77.51,et seq., Stats.), which is to be precollected by the retailer (sec. 77.52, Stats.) the cigarette use tax is not precollected by the seller but rather the burden is on the purchaser to pay the tax. AS already indicated, the Indian tax exemption extends to the tribe and individual tribe members and as such the state has no jurisdiction to impose either the sec. 139.31, Stats., occupational tax or the sec. 139.33, Stats., use tax under the circumstances outlined in your question. Non-Indian purchasers are subject to the use tax for purchases made on a reservation.See discussion following question six infra.
3. You then ask if the answer to question one is no, is the Indian distributor subject to the cigarette taxes imposed at sec.139.31, Stats.
The answer to this question is no for the reasons stated in question one above.
4. You next ask if the Indian distributor of cigarettes is subject to the cigarette tax law, what means are available to this Department to enforce payment of the tax under sec. 139.32, Stats. You list a number of current enforcement options available to the Department.
Since it is my opinion that an Indian distributor doing business on a reservation is not subject to the cigarette tax law it is not necessary to consider this question.
5. You next ask whether a retailer selling cigarettes on a reservation is required to obtain a retailer's license under sec.134.65, Stats., and, if so, who has authority to issue such licenses.
Section 134.65 (1), Stats., provides:
 No person shall in any manner, or upon any pretense, or by any device, directly or indirectly sell, expose for sale, possess with intent to sell, exchange, barter, dispose of or give away any cigarettes to any person not holding a license as herein provided or a permit under s. 139.30 to 139.41 without first obtaining a license from the clerk of the city, village or town wherein such privilege is sought to be exercised.
This section allows local government to impose an additional burden upon retail sellers of cigarettes in the form of a license fee. This "fee" requirement is separate from and in addition to the permit *Page 158 
requirement under secs. 139.30 to 139.41, Stats. Since it is my opinion that an Indian seller is not required to have the state permit, it follows there also is no jurisdictional basis for requiring the local permit. It is, therefore, my opinion that an Indian tribe or Indian person selling cigarettes on a reservation is not required to obtain a retailer's license under sec. 134.65, Stats.
6. You next ask: When an Indian retailer of cigarettes, having a place of business on an Indian reservation in Wisconsin, purchases unstamped cigarettes from a resident or non-resident distributor, who is either an Indian or non-Indian, with or without a permit, and the retailer sells the unstamped cigarettes on the reservation to Indian and non-Indian consumers, is the Indian retailer subject to the tax imposed at either secs. 139.31
or 139.33, Stats., on such cigarettes?
Retailers of cigarettes generally are subject to the occupational tax imposed by sec. 139.31, Stats., if the tax has not already been paid. As indicated above, an Indian seller is not subject to the occupational tax where sales are made on a reservation.
The use tax imposed by sec. 139.33, Stats., is on the purchaser rather than the seller and, therefore, a retailer would not be liable for that tax. Under the factual situation you pose, an Indian retailer has been able to acquire unstamped cigarettes, presumably in other states, for resale to consumers in Wisconsin. If that retailer's sales are to Indian persons on a reservation, such sales are not subject to either the occupational tax or the use tax. Whether sales to non-Indian consumers are subject to the use tax is less clear.
In Moe v. Confederated Salish and Kootenai Tribes, Etc.,425 U.S. 463 (1976), the Court concluded that on-reservation sales by an Indian retailer to non-Indian consumers were subject to the Montana cigarette sales tax. The Court concluded that because the Montana tax was a direct tax on the retail consumer, precollected for the purpose of convenience and facility only, it could not be considered a tax on the Indian seller and would therefore constitute a lawful tax. The Court considered whether the Montana requirement (that the Indian seller precollect the tax on sales to non-Indians) interfered with reservation self-government or would impair a right granted or reserved by federal law. Williamsv. Lee, 358 U.S. 217 (1959); New York v. Martin, 326 U.S. 496,499 (1946): Draper v. United States, 164 U.S. 240 *Page 159 
(1896). The Court in concluding there was no infringement noted:
 The State's requirement that the Indian tribal seller collect a tax validity imposed on non-Indians is a minimal burden designed to avoid the likelihood that in its absence non-Indians purchasing from the tribal seller will avoid payment of a concededly lawful tax. Since this burden is not, strictly speaking, a tax at all, it is not governed by the language of Mescalero, quoted supra, at 1642, dealing with the "special area of state taxation." We see nothing in this burden which frustrates tribal self-government, [citation omitted] or runs afoul of any congressional enactment dealing with the affairs of reservation Indians, [citation omitted] . . . . We therefore agree with the District Court that to the extent that the "smoke shops" sell to those upon whom the State has validly imposed a sales or excise tax with respect to the article sold, the State may require the Indian proprietor simply to add the tax to the sales price and thereby aid the State's collection and enforcement thereof.
Moe v. Confederated Salish and Kootenai Tribes, Etc. at 483.
Wisconsin's cigarette use tax does not seem to come within this exception to proscribed state taxation. As already noted, the Wisconsin Statutes do not require the retailer to precollect the cigarette use tax. It is, therefore, my opinion that under the existing state statutes an Indian retailer of cigarettes has no obligation to collect the cigarette use tax on sales to non-Indians.
7. You next ask if my response to questions one through six would be the same if the place of business of the Indian distributor or retailer was on the Menominee Reservation rather than on one of the other Wisconsin Indian reservations. You note that Wisconsin has general civil and criminal jurisdiction over the latter (pursuant to Pub.L. No. 280) and not the former.
As noted in the opening comments to this opinion, Bryan
forecloses the possibility of reaching a different conclusion regarding taxation in view of Pub.L. No. 280 because the Court held that Pub.L. No. 280's grant of civil jurisdiction only confers jurisdiction over civil causes of action involving Indians. See also Washington v. Confederated Bands and Tribes,439 U.S. 463, 99 S.Ct. 740 (1979). It is not a general grant of regulatory and taxing power over Indians. It is, *Page 160 
therefore, my opinion that for taxation purposes the Menominee Tribe enjoys the same status as do other Wisconsin tribes.
8. In your next question you ask whether my response to questions one through six would be the same if the distributor or retailer was an Indian tribe rather than an individual Indian.
As already suggested, it is my opinion that under the existing tax statutes both the tribe and tribal members enjoy the tax immunity considered herein. It should be kept in mind, however, that an Indian tribe does enjoy general immunity from suit because of its sovereign status. See United States v. Wheeler,435 U.S. 313 (1978). This could impose added problems regarding any attempt by the state to exercise jurisdiction directly over Indian tribes regardless of purpose; for example, an attempt to require a tribe as opposed to an individual business to precollect sales taxes on sales to non-Indians on the reservation.
9. You next ask whether my response to questions one through six would be the same if the distributor or retailer was a corporation or a partnership with some Indian person investment and, if so, what proportion of Indian person investment would be required. You cite Eastern Navajo Industries, Inc. v. Bureau ofRevenue of the State of New Mexico, 552 P.2d 805, 89 N.M. 369
(1976), cert. denied, 430 U.S. 959, 51 L.Ed. 2d 810.
In Eastern Navajo Industries, Inc. the court concluded that incorporation under New Mexico law did not cause the Indian owners of the corporation to lose their tax exempt status. Navajos held a fifty-one percent majority of the corporation's stock, which under various federal programs qualified the corporation for consideration by the federal government as an Indian business. It is not practicable in the absence of a specific fact situation to exhaustively search all federal statutes that may similarly affect the incorporation of tribal businesses established to engage in the sale of cigarettes. The same result reached by the New Mexico court in Eastern NavajoIndustries, Inc. may very well follow, with respect to Indian businesses incorporated under Wisconsin law, but I believe it best to defer specific comment until an actual fact situation is presented.
10. You next ask if my response to questions one through six would be the same if the Indian distributor or retailer held a federal Indian trader's permit and obtained rights from the tribe to distribute *Page 161 
for retail sale cigarettes on the reservation to Indians and to non-Indians.
Possession of a federal Indian trader's permit may affect the ability of a business to operate within an Indian reservation and reflects federal pre-emption in this area; see Warren TradingPost v. Arizona Tax Com., 380 U.S. 685 (1965); but such permit probably would have little or no bearing on the jurisdiction of the state to impose cigarette taxes to on-reservation sales tonon-Indians. Moe v. Confederated Salish and Kootenai Tribes,Etc., 425 U.S. 463 (1976).
As already indicated the state does have jurisdiction to require Indian retailers doing business on a reservation to precollect taxes on sales to non-Indians assuming that state law requires such precollection. Id. It is unclear what effect a tribe's exercise of jurisdiction with respect to taxation generally would have on the state's jurisdiction over sales to non-Indians. One three-judge district court recently concluded that tribal ordinances taxing on-reservation sales of cigarettes to non-Indians pre-empted state jurisdiction and the state law thus constituted an unreasonable interference with tribal self-government.Confederated Tribes of Colville v. State of Wash.,446 F. Supp. 1339 (E.D. Wash. 1978). An appeal of that decision is currently pending in the United States Supreme Court (47 U.S.L.W. 3287; No. 78-630 (1978))
In Fort Mojave Tribe v. San Bernardino County, 543 F.2d 1253
(9th Cir. 1976), the court reached in effect an opposite conclusion. The tax at issue was a possessory interest tax imposed by California on non-Indian lessees of land held in trust by the federal government for the Fort Mojave Indian Tribe. In considering whether the state tax infringed on the rights of the tribe to govern itself (Williams v. Lee, 358 U.S. 217 (1958)), the court noted that there was no improper double taxation because the taxes were being imposed by two different and distinct taxing authorities, namely the State of California and the tribe. The Court went on to note that the tribe faces the same problem as other taxing agencies confront when they seek to impose a tax in an area already taxed by another entity having taxing power, 543 F.2d at 1258.
It is my understanding that none of the Wisconsin tribes have enacted laws covering cigarette taxation; therefore, it is not now possible to reach a definitive resolution of issues presented by such *Page 162 
action. In all events, the court's decision in the appeal ofConfederated Tribes of Colville v. State of Wash., will probably provide an answer to the question of whether tribal law can pre-empt state taxing jurisdiction over non-members.
11. Your last question asks if my response to questions one through six distinguishes between Indians and non-Indians in the application or enforcement of the cigarette tax law, and, if so, what definition I would apply to the word "Indian."
As already suggested, the tax exemption does not extend to non-Indian consumers, retailers, or other sellers of cigarettes.
To answer your question concerning who is an Indian, it is my opinion that "Indian" for purpose of taxation can be defined as an individual of Indian descent who is recognized in the local community as an Indian or is a member of a recognized federal Indian tribe. Membership in the tribe as evidenced by either a name on the tribal roll or confirmation of such fact by the tribe would probably be considered authoritative evidence that the state does not have jurisdiction over that person for taxation purposes. It follows that persons not of Indian descent and not tribe members cannot claim the exemption.
Finally, in communication with this office subsequent to your formal opinion request, you asked whether sales made by distributors doing business outside reservations to Indian distributors or retailers doing business on a reservation would be exempted from the sec. 139.31, Stats., occupational tax if the Indian purchaser were exempt from the tax. Although the tax exemption does not extend to non-Indian sellers or purchasers, a limited exception under the Wisconsin Statutes may be possible where a non-Indian distributor sells unstamped cigarettes to Indian distributors doing business on a reservation. Section139.32 (1), Stats., provides:
 (1) The tax imposed by s. 139.31 shall be paid by purchase of stamps from the secretary. To evidence the payment, stamps of the proper denomination shall be affixed to each package or other container in which cigarettes are packed, prior to the first sale within this state. First sale does not include a sale by a manufacturer to a distributor or by a distributor to a permittee who has obtained department approval as provided for in sub. (8)(a) 2. The tax shall be paid only once on each package or container. *Page 163 
Section 139.32 (8), Stats., makes it unlawful for any person to possess in excess of 400 cigarettes unless the required stamps are properly affixed. Subsection (8) provides, however:
(a) This subsection shall not apply to the following:
. . . .
 2. Any permittee under s. 139.34 having department approval or person authorized to acquire, possess or sell unstamped cigarettes under s. 139.31 (3) provided that said permittee or person maintains a separate inventory thereof and records pertaining thereto in such manner and form as the department prescribes by rule.
It is my opinion that these statutory provisions would allow the Department through appropriate rules and regulations to approve the sale of unstamped cigarettes to Indian distributors by non-Indian distributors without holding the non-Indian distributor responsible for the tax.
BCL:JDN