PETER J. NAZE, District Attorney Brown County
You ask whether Indian tribes are subject to the Bingo Control Act. Ch. 163, Stats. In the situation you have described, the Oneida Tribe has been conducting bingo games but has not applied for a bingo license under ch. 163. Furthermore, the procedures used in awarding prizes and the types of prizes awarded appear to be in violation of ch. 163. The issue is whether the state has jurisdiction over the bingo activities conducted by the Oneida Tribe.
Until 1973, bingo was a lottery forbidden by Wis. Const. art. IV, sec. 24 and secs. 945.02 and 945.03(4), Stats. In 1973, Wis. Const. art. IV, sec. 24, was amended in the following manner:
 The legislature shall never authorize any lottery, or grant any divorce, but may authorize bingo games licensed by the state and operated by religious, charitable, service, fraternal or veterans organizations or those to which contributions are deductible for federal or state income tax purposes. All profits must inure to the licensed organization and no salaries, fees or profits shall be paid to any other organization or person. . . . *Page 23 
The Legislature subsequently amended sec. 945.01(2), Stats., by adding the following sentence:
 (2)(am) "Lottery" does not include bingo as defined in s. 163.03(1) if it is conducted pursuant to ch. 163.
Chapter 163, Stats., was enacted to implement the constitutional amendment. It sets forth the standards for licensing bingo operations and the criteria that must be met before the conduct of bingo is legal. Therefore, unless bingo is conducted in full compliance with ch. 163, it is not legal, and persons so engaged are subject to prosecution under secs. 163.54, 945.02, 945.03, or 945.04, Stats. See 65 Op. Att'y Gen. 80 (1976); see also Wis. Bingo Sup. Equip. Co. v. Bingo ControlBd., 88 Wis.2d 293 276 N.W.2d 716 (1979): State ex rel. Trampev. Multerer, 234 Wis. 50, 289 N.W. 600 (1940). It follows that if the State of Wisconsin has jurisdiction on Indian reservations to enforce its criminal laws against Indian persons for gambling and related conduct, the persons involved in the bingo operations you describe on the Oneida Reservation are subject to state prosecution.
As indicated in previous opinions, there are certain basic legal principles which govern the resolution of jurisdictional questions concerning Indians and Indian lands. See, e.g., 68 Op. Att'y Gen. 151 (1979); 65 Op. Att'y Gen. 276 (1976); 64 Op. Att'y Gen. 184 (1975). State law unquestionably applies to Indians on Indian reservations where there is clear congressional authorization. It is my opinion that in the situation you describe there is clear congressional authorization for the state to enforce its criminal laws relating to gambling activities.
On August 15, 1953, Pub.L. No. 280 (67 Stat. 558,28 U.S.C. sec. 1360, 18 U.S.C. sec. 1162) was enacted. It granted limited civil and general criminal jurisdiction to the State of Wisconsin in "all Indian country within the state except the Menominee Reservation." [The Menominee subsequently were brought within the coverage of Pub.L. No. 280 but were removed again effective March 1, 1976. See 66 Op. Att'y Gen. 290 (1977).] The provision of Pub.L. No. 280 (18 U.S.C. sec. 1162(a)) relevant to the instant analysis, states:
 (a) Each of the States or Territories listed in the following table shall have jurisdiction over all offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such *Page 24 
State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory. . . .
(Emphasis added.)
In view of Pub.L. No. 280 and the relevant state statutes, it is my opinion that bingo, whether conducted on an Indian reservation or elsewhere, constitutes gambling which is proscribed by Wisconsin law unless conducted in compliance with ch. 163, Stats. Accordingly, your office has the authority to enforce Wisconsin laws against unauthorized bingo activities whether conducted on or off the Oneida Reservation. This conclusion also is supported by court decisions that have considered gambling activities on Indian reservations.
In United States v. Sosseur, 181 F.2d 873 (7th Cir. 1950), the court concluded that gambling activities on Indian reservations proscribed by state law were subject to federal prosecution under the Assimilative Crimes Act, 18 U.S.C. sec. 13, and the General Crimes Act, 18 U.S.C. sec. 1152. (This latter section extends the general laws of the United States, as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, to the Indian country, with certain exceptions not involved here.) Wisconsin's anti-gambling law thus became federal law for purposes of enforcement within Indian reservations. Although Sosseur had been granted a license by the tribal council to "place on Indian land . . . any type of coin operated device licensed or taxed by the United States Government," the court concluded that a tribal law cannot license the violation of a federal or state criminal law. Cf.United States v. Blackfeet Tribe of Blackfeet Ind. Res.,364 F. Supp. 192 (U.S. D. Mont. 1973); Compare United States v.Wheeler, 435 U.S. 313 (1978). It is true that Sosseur predated the enactment of Pub.L. No. 280. The effect of Pub.L. No. 280, however, was simply to transfer jurisdiction over such illegal activities from the federal government to the state. The Court's holding that persons on reservations who engage in gambling activities proscribed by state law are subject to prosecution, even where authorized by the Tribe, is still the law. Regardless of whether the federal government or state government, or both, have jurisdiction over gambling activities on Indian *Page 25 
reservations, it is clear that any form of gambling not authorized by the state is proscribed conduct subject to prosecution.
I have also considered whether the Gambling Devices Act of 1962, 15 U.S.C. sec. 1175, preempts enforcement of state criminal laws. It is my opinion that it does not. That statute prohibits the possession or use of gambling devices within Indian country. There is nothing in the legislative history of 15 U.S.C. sec. 1175
to indicate congressional intent to preempt the application of state criminal laws in this general subject area whether pursuant to Pub.L. No. 280, or in appropriate cases, to the Assimilative Crimes Act. I have found nothing in other federal statutes or in treaties with the Oneida Tribe to indicate an exception to the enforcement of laws against unauthorized gambling activities by Oneida Tribe members within the State of Wisconsin.
As I have indicated in other opinions, Indian tribes are recognized as legitimate governmental entities. See, e.g., OAG 61-79; 66 Op. Att'y Gen. 115 (1977); 65 Op. Att'y Gen. 276 (1976). As such they possess the common law immunity from suit traditionally enjoyed by sovereign powers. Santa Clara Pueblo v.Martinez, 436 U.S. 49, 58 (1978). A tribe is exempt from suit unless there is a congressional waiver unequivocally expressed.Id. In California v. Quechan Tribe, 595 F.2d 1153
(9th Cir. 1979), the court concluded that Pub.L. No. 280 was not a congressional waiver of a tribe's sovereign immunity. Although an Indian tribe is immune from suit, tribe officials who act in excess of their powers and tribe members do not enjoy the same immunity. Santa Clara Pueblo, 436 U.S. at 59; PuyallupTribe, Inc. v. Washington Dept. of Game, 433 U.S. 165, 171-72
(1977); State of Wis. v. Baker, 464 F. Supp. 1377
(W. D. Wis. 1978); cf. Ex Parte Young, 209 U.S. 123 (1908). It is my opinion that unless the bingo operations on the Oneida Reservation can be brought into compliance with ch. 163, Stats., the persons engaged in their conduct are subject to appropriate legal action by your office.
BCL:JDN *Page 26